**SO ORDERED: August 21, 2013.**



**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCOTT IAN RICHARDSON, | ) | Case No. 00-10506-JKC-7 |
| | ) | |
|     Debtor. | ) | |
| _____ | ) | |
| SCOTT IAN RICHARDSON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 12-50165 |
| | ) | |
| TRUSTEES OF INDIANA UNIVERSITY, | ) | |
| | ) | |
|     Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Trustees of Indiana University's

("Defendant") Motion for Summary Judgment on Plaintiff/Debtor Scott Ian Richardson's ("Debtor")

First Amended Complaint for Willful Violation of Stay (the "Amended Complaint").  Having

reviewed the parties' respective briefs and submissions, the Court hereby holds that Debtor is barred by the doctrine of judicial estoppel from asserting a claim for damages under 11 U.S.C. § 362(k)(1). However, the Court also holds that the underlying state court judgment at issue in this proceeding is invalid as having been issued in violation of the automatic stay.

## Findings of Fact

1.     Debtor incurred a debt, in the nature of a student loan, to Defendant in 1988 (the "Debt").

2.     In May of 1998, Defendant filed a complaint in Monroe Circuit Court, Cause No. 53C04-9805-CP-733, against Debtor regarding the Debt (the "State Action").

3.     The Monroe Circuit Court scheduled the complaint for a bench trial on September 7, 2000.

4.     Debtor filed a voluntary petition for bankruptcy under Chapter 7 on September 1, 2000.  Defendant was listed as a creditor in the bankruptcy and received notice of the bankruptcy sometime on or after September 9, 2000, the date on which this Court issued notice of the first meeting of creditors.

5.     Defendant appeared at the bench trial on September 7, 2000; Debtor did not.

6.     On September 12, 2000, the Monroe Circuit Court entered a judgment in favor of Defendant and against Debtor (the "Judgment") in the amount of $1,071.46, plus attorney fees of $502.72 and costs.

7.     After entry of the Judgment, Debtor's bankruptcy counsel sent a letter to Defendant seeking to settle the Judgment for a lump sum.  The letter referenced that the Judgment was entered despite the automatic stay but did not indicate that Debtor intended to have the Judgment set aside

2

or seek redress for violation of the stay.

8.    Debtor received a discharge on May 3, 2001.  The bankruptcy case was closed on February 26, 2002.

9.     On June 24, 2001, Defendant filed a Verified Motion in Proceedings Supplemental in the State Action in an attempt to collect the Judgment.  Debtor eventually moved to have the Judgment set aside (the "Motion to Set Aside"), arguing that the Judgment had been entered in violation of the stay.  Debtor claims, and Defendant does not dispute, that he did not receive notice of the hearing for the Motion to Set Aside and that he, therefore, did not appear.  He also claims, and Defendant does not dispute, that he did not receive notice of the order issued by the state court denying his requested relief.[1]

10.    Notwithstanding the fact that he did not receive the order on his Motion to Set Aside, Debtor assumed that the motion had been granted given the nature of, and reason for, the relief requested therein.

11.    Debtor filed a Chapter 13 bankruptcy petition on January 29, 2002.  At the time he initiated the case, he was still under the belief that the Judgment had been set aside.  He, therefore, did not schedule or disclose any claim against Defendant, e.g., for violation of the automatic stay, as an asset of his bankruptcy estate.

12.    Defendant filed a proof of claim on February 8, 2002.  The proof of claim reflects that Defendant obtained the Judgment on September 12, 2000, and a copy of the Judgment is attached to the proof of claim.

---

[1]   It is not clear from the record whether the state court denied the Motion to Set Aside simply because Debtor did not appear or for a more substantive reason.

3

13.     Debtor received a Chapter 13 discharge on April 10, 2007.  The case was closed on October 4, 2007.

14.     On April 20, 2007, and May 1, 2007, Defendant filed a motion for proceedings supplemental and a motion for writ of attachment in the State Action.  On October 23, 2007, Debtor sent a letter to Defendant insisting that the Judgment was taken in violation of the stay and requesting that Defendant set aside the Judgment.  Debtor indicated that he intended to "file a claim for damages, based on [Defendant's] actions of violating the Federal Bankruptcy Stay."  On December 6, 2007, Debtor moved to vacate the writ of attachment issued in the State Action and, at a March 13, 2007 hearing, indicated that he intended to file a motion to set aside the Judgment.  He did not file such motion, nor did he appear at any subsequent hearings.

15.     On March 29, 2011, Defendant filed a Verified Motion for Proceedings Supplemental in the State Action.

16.     On May 11, 2012, Debtor moved to reopen his Chapter 7 case.  Such request was granted on May 15, 2012.  Debtor then filed a complaint and, eventually, an amended complaint (the "Amended Complaint") against Defendant seeking damages under 11 U.S.C. § 362(k)(1)[2] for violations of the automatic stay.

17.     On July 23, 2012, Defendant moved for dismissal of the Amended Complaint under Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), arguing that Debtor had failed to state a cause of action upon which relief could be granted.  The Court denied the motion by order dated September 10, 2012, concluding that there was sufficient case law

---

[2] Section 362(k)(1) provides: "[e]xcept as provided in paragraph (2), an individual injured by any willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and , in appropriate circumstances, may recover punitive damages."

4

to support Debtor's claim.[3]

18.     On December 1, 2012, Debtor filed a Verified Emergency Motion for Order Declaring Judgment Obtained in Violation of the Automatic Stay Void.  The Court denied the motion, finding that the request was inextricably entwined in Debtor's Amended Complaint and would be addressed as such.  The Court also ordered the parties to mediate their dispute.  Per a mediator's report filed in February of 2012, the mediation did not lead to a resolution of the parties' dispute.

19.     Defendant then moved for summary judgment, arguing that (1) Debtor's stay violation claim is barred by laches and/or judicial estoppel; and (2) that because the Judgment is merely voidable, not void, Debtor cannot as a matter of law establish a "willful" violation of the stay.

20.     Defendant has never asked for, nor obtained, retroactive relief from, or annulment of, the stay pursuant to Code § 362(d).

## Conclusions of Law

1.     The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  The parties have consented to this Court's

---

[3] In relevant part, the Court's September 12, 2012 order stated:
[W]hile the trial itself violated the automatic stay, the Court cannot conclude that the University's participation  in the trial, itself, was willful.  But the University's remaining arguments oversimplify relevant case law.  There are numerous cases that support Debtor's allegation that the University was required to take reasonable steps to forestall issuance of the judgment or, once the judgment issued, to take steps to have it set aside.  *See Eskanos & Alder, P.C. v. Leetien (In re Eskanos )*, 309 F.3d 1210 (9th Cir.2002); *Keen v. Premium Asset Recovery Cor. (In re Keen)*, 301 B.R. 749, 753 (Bankr.S.D.Fla.2003); *Johnston v. Parker* (*In re Johnston*), 321 B.R. 262, 286 (Bankr.D.Ariz.2005); *In re Johnson,* 262 B.R. 831, 847 (Bankr.D.Idaho 2001); *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 490 (Bankr.S.D.Ohio 1989).  There is also case law that supports Debtor's allegation that the University's attempt[s] to enforce the judgment in 2007 and 2011 also constitute willful violations of the stay, despite the fact that the stay was no longer in effect on those dates–to the extent that such efforts were in aid of a judgment issued in violation of the stay.  *See Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 285 (Bankr.S.D.S.C.2009).
*Order Denying Defendant's Motion to Dismiss* at *6.

entry of a final judgment.

## Void versus Voidable

2.    As set forth above, Defendant argues on summary judgment that because the Judgment is merely voidable, Debtor cannot as a matter of law establish a "willful" violation of the stay.  That argument encompasses the penultimate issue the Court must decide in this proceeding, i.e., whether the Judgment is void or merely voidable.

3.    Section 362(a)(1) provides in relevant part that a bankruptcy petition "operates as a stay, applicable to all entities, of the commencement or continuation of a judicial . . .action or proceeding against the debtor."  Here, the trial that took place in the Monroe Circuit Court on Defendant's action against Debtor and the resulting Judgment were a continuation of a judicial proceeding against Debtor and, as such, constitutes a violation of the automatic stay.  The fact that Defendant did not learn of the bankruptcy case until after entry of the Judgment does not alter that result.

4.    The circuit courts are split as to whether actions taken in derogation of the automatic stay are void ab initio or merely voidable, with the overwhelming majority holding that actions taken in violation of the stay are void.  *See Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir.1997); *Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir.1995); *Parker v. Bain*, 68 F.3d 1131 (9th Cir.1995); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020 (10th Cir.1994); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir.1994); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir.1984).

5.    The Seventh Circuit has said that actions taken in violation of the stay are generally void, *see Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984) (interpreting statutory predecessor

6

of § 362). However, in recognizing the void-versus-voidable split among the circuits, it has declined opportunities to formally and conclusively decide the issue. *See Middle Tenn. News. Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 n. 6 (7th Cir.2001). Thus, in the absence of a clear directive from the Seventh Circuit, this Court must look outside the circuit to determine the legal effect of the Judgment.

6.    In reviewing the numerous opinions on the issue, the Court finds the Ninth Circuit's reasoning and conclusion, as expressed in *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir.1992) to be particularly compelling. As support for its holding that actions taken in violation of the stay are void, not voidable, *Schwartz* enunciated the following rationale:

> In light of the automatic stay's purpose, the issue before us requires some analysis of the relevant policy considerations. Either the debtor must affirmatively challenge creditor violations of the stay, or the violations are void without the need for direct challenge. If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions. If violations are void, however, debtors are afforded better protection and can focus their attention on reorganization.
>
> Given the important and fundamental purpose of the automatic stay and the broad debtor protections of the Bankruptcy Code, we find that Congress intended violations of the automatic stay to be void rather than voidable. Nothing in the Code or the legislative history suggests that Congress intended to burden a bankruptcy debtor with an obligation to fight off unlawful claims. . . .
>
> The district court in *In re Garcia*, 109 B.R. 335 (N.D.Ill.1989), explained that if violations of the automatic stay were merely voidable, creditors would be encouraged to violate the stay:
>
>> [T]he fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable. Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered

for a sufficient period of time. This may be an acceptable risk to some creditors when measured against a delayed prorata distribution.

Like the court in *Garcia*, we will not reward those who violate the automatic stay. The Bankruptcy Code does not burden the debtor with a duty to take additional steps to secure the benefit of the automatic stay. Those taking post-petition collection actions have the burden of obtaining relief from the automatic stay. *See In re Williams*, 124 B.R. 311, 317-18 (Bankr.C.D.Ca.1991).

*(In re Schwartz)*, 954 F.2d 559, 571-72 (9th Cir.1992).

7.   *Schwartz* further observed that "[t]he courts that have found the automatic stay voidable rather than void have relied primarily on §§ 362(d) and 549 of the Code, reasoning that a court's power to annul the automatic stay and the trustee's duty under § 549 to void an unauthorized post-petition transfer are inconsistent with violations of the stay being void." *Id.* at 572 (citing *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178-79 (5th Cir.1989) and *In re Oliver*, 38 B.R. 245, 248 (Bankr.D.Minn.1984)). In finding such reasoning "erroneous," the *Schwartz* court explained:

Section 362(d), a subsection of the automatic stay provision, gives the bankruptcy court the power to grant creditors relief from the stay. It provides in part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .

11 U.S.C. § 362(d) (1988). Thus, section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay. 2 Collier on Bankruptcy, § 362.07 (15th ed. 1984). Some courts have reasoned that the power to grant retroactive stay relief means that actions which violate section 362(a) cannot be absolutely void, for if they were, section 362(d) would be meaningless. *See, e.g., Sikes*, 881 F.2d at 178-79; *Oliver*, 38 B.R. at 248.

However, section 362(d) is not inconsistent with the conclusion that any action in violation of the automatic stay is void and of no effect. Section 362(d) outlines the bankruptcy court's authority to make exceptions to the general operation of the stay. If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue.

8

The *Sikes* and *Oliver* courts read far too much into the meaning and operation of section 362(d). The power to grant relief, even retroactively, simply does not mean that violations of the stay must be merely voidable rather than void. As was explained by the court in *In re Garcia*, 109 B.R. at 339, "that Congress saw fit to include specific exceptions to the automatic stay does not require the conclusion that actions in violation of the automatic stay are merely voidable." It is entirely consistent to reason that, absent affirmative relief from the bankruptcy court, violations of the stay are void.

Statements from leading authorities on bankruptcy generally support this conclusion: "The use of the word 'annulling' [in § 362(d) ] permits the [court's] order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. Such actions would otherwise be void." 2 Collier on Bankruptcy § 362.07 (emphasis added). With that understanding, section 362(d) gives the court the power to ratify retroactively any violation of the automatic stay which would otherwise be void. Simply put, there is nothing remarkable or inconsistent about the normal operation of the automatic stay being subject to a specific statutory exception such as that found in section 362(d). *See Sikes*, 881 F.2d at 180 (Johnson, J., dissenting) (noting that although violations of the automatic stay are void, "a bankruptcy court may validate an otherwise void filing in violation of the automatic stay").

***

The more important potential conflict with interpreting the automatic stay as voiding violations is provided by section 549 of the Code. *See, e.g., Sikes*, 881 F.2d at 179 (court determining that § 549 is inconsistent with automatic stay voiding violations). Section 549 allows the bankruptcy trustee to avoid certain authorized transfers and all unauthorized transfers of estate property. Section 549 includes a statute of limitation which requires the trustee to commence an action to void a transfer either within two years of the transfer or before the close of the case, whichever is earlier. 11 U.S.C. § 549(d). The Code's definitions dictate that section 549 can apply to a wide variety of transactions. "Transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property. . . ." 11 U.S.C. § 101(50) (1988). Further, "property of the estate" includes all legal interests in property. 11 U.S.C. § 541 (1988).

The supposed conflict between section 549 and section 362 can be explained by the following reasoning. First, the expansive definition of "transfer" means that sections 362 and 549, at times, cover the same transactions. Second, section 549 implies that some of these overlapping transactions will be valid unless affirmatively challenged by the trustee. Therefore, some argue that section 362 cannot be interpreted to void these overlapping transactions, for doing so would render section 549 moot. *See,*

9

*e.g., Sikes*, 881 F.2d at 179.

On the surface, this conflict appears troublesome. However, a straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. *Garcia*, 109 B.R. at 338-40; *In re R & L Cartage & Sons*, 118 B.R. 646, 650-51 (Bankr.N.D.Ind.1990) (adopting *Garcia* analysis). In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. *See Garcia*, 109 B.R. at 339. For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person. The trustee has the power to avoid such a transfer under section 549.

Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, section 549 has a purpose in bankruptcy beyond the potential overlap with section 362. In other words, the automatic stay can void any violation and still leave section 549 with a valid and important role in bankruptcy. Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property. Although there are circumstances where section 362 overlaps section 549 and renders it unnecessary, this overlap falls far short of rendering section 549 meaningless.

Similarly, subsection 549(c)'s protection of good faith purchasers carves out an extremely specific and narrow exception to the automatic stay when section 362 overlaps subsection 549(c). There is no reason to infer from this narrow exception that violations of the automatic stay are not void. *See Garcia*, 109 B.R. at 339-40. It is disingenuous to argue that the general rule must be invalid simply because there is a narrow exception to the rule. If violations of the automatic stay are not void because there is a narrow exception under subsection 549(c), then by the same reasoning the rest of section 549 would be invalid because subsection 549(c) creates an exception to the trustee's power to avoid postpetition transfers.

Indeed, subsection 549(c) sheds no light on the void/voidable distinction. Subsection 549(c) is an exception to section 362 regardless of whether violations of the automatic stay are void or merely voidable. Congress did not draft subsection 549(c) to demonstrate that violations of the automatic stay are merely voidable; Congress drafted subsection 549(c) to protect good faith purchasers where the sale would otherwise be subject to avoidance under section 549 or void under section 362.

*Id*. at 572-574. On this logic, *Schwartz* concluded that actions taken in violation of the stay are void, not voidable. *See also LeBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317 (8th Cir.BAP 1999)

10

(quoting extensively from *Schwartz* in reaching same conclusion).[4]

8.       Of course, the *Schwartz* court is not without its detractors.  In holding that actions taken in violation of the stay are merely "voidable," the Sixth Circuit in *Easley v. Pettibone Michigan Corp*., 990 F.2d 905 (6th Cir.1993), took issue with *Schwartz's* statement that the burden should not be on debtors to invalidate actions taken in violation of the stay, stating:

> We believe the Ninth Circuit overstates the difference between what would be required of debtors if actions in violation of the stay are void or voidable, because in either case, the debtor must respond in some fashion to the action.  A debtor need only file a motion to dismiss on the grounds that the action violates section 362(a) and should be declared void.  Indeed, this is the procedure followed in all cases in which the void/voidable issue has arisen.  And unless equity dictates otherwise, these actions will be voided by the court in which the invalid action against the debtor was filed. We emphasize that we are not encouraging creditors to violate the stay, and we offer no new exceptions to the operation of the stay by the mere holding that actions in violation of the stay are voidable.

*Id.* at 910.

9.       The Court disagrees with *Easley* in this regard.  Placing the burden on the debtor to take some affirmative action to void or invalidate a stay violation flies in the face of the primary purpose of the automatic stay.  For some debtors, taking any action–no matter how seemingly routine–is burdensome, financially and emotionally.  In this Court's opinion, it is much more

---

[4] Like *Schwartz*, the court in *Vierkant* stated its concerns about placing the burden on the debtor to invalidate or "void" an action taken in violation of the stay:

> "[T]he characterization of an infringing action as "void" or "voidable" influences the burden of going forward.  Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor.  In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor.  We think that the former paradigm, rather than the latter, best harmonizes with the nature of the automatic stay and the important purposes that it serves.  See generally 3 Collier on Bankruptcy, supra, ¶ 362.11[1] & n. 1 (observing that most courts hold violations void and terming this the better view)."

*Id*. at 325 (quoting *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir.1997)).

equitable, and in keeping with the purpose behind the stay, to place the burden on the creditor to take affirmative action to validate an otherwise invalid act.

10.    The Court also disagrees with *Easley* to the extent the court seemingly ignored the impact of its holding on other creditors.  The automatic stay serves to protect not just debtors, but creditors as well.  *See Martin-Trigona v. Champion Federal Sav. and Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989) ("The fundamental purpose of bankruptcy, from the creditors' standpoint, is to prevent creditors from trying to steal a march on each other . . . and the automatic stay is essential to accomplishing this purpose.") (citations omitted).  That purpose is not served particularly well in those jurisdictions that burden the debtor with invalidating stay violations or, as *Easley* suggests, by seeking invalidation outside of the bankruptcy court.  What if a debtor lacks the resources or inclination to invalidate a judgment taken in violation of the stay?  What if the debtor fails to convince a state court to invalidate an action taken in violation of the stay?  In such instances, the debtor's remaining creditors are likely given no notice that the stay was violated and are given no opportunity to be heard on the matter in the event the stay violation helped the offending creditor improve its position at the expense of other creditors.

11.    In this Court's opinion, it is far preferable for such matters to be adjudicated before the bankruptcy court, and the best way to guarantee that is to hold that actions taken in violation of the stay have no legal effect unless and until a creditor seeks retroactive relief from the bankruptcy court pursuant to Code § 362(d) to validate the otherwise invalid act.

12.    The Court does agree with *Easley* in its opposition to use of the word "void" to describe the legal effect of actions taken in violation of the stay.  The court explained:

In our opinion, the only path that will lead us to the correct answer in the

12

void/voidable debate must begin by defining "void" and "voidable." As should be evident, these words are not synonyms, however, they are often used interchangeably and imprecisely. "There is great looseness and no little confusion in the books in the use of the words void and voidable, growing, perhaps, in some degree, out of the imperfection of the language, since there are several kinds of defects which are included under the expressions void and voidable, while there are but two terms to express them all." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 570 (1987) (quoting, 92 C.J.S. at 1020-23 (1955)).

"Void" is defined as "an instrument or transaction [that] is nugatory and ineffectual so that nothing can cure it," Black's Law Dictionary 1573 (6th ed. 1990); and as that "of no legal force or effect and so incapable of confirmation or ratification." Webster's Third New International Dictionary 2562 (1971). "Voidable" is defined as "not void in itself," Black's Law Dictionary 1574 (6th ed. 1990), and as "capable of being adjudged void, invalid, and of no force," Webster's Third New International Dictionary 2562 (1971). We think that "invalid" is a more appropriate adjective to use when defining an action taken against a debtor during the duration of the automatic stay. Like the word "void," "invalid" describes something that is without legal force or effect. However, something that is invalid is not incurable, in contrast to a void action which is incapable of being ratified.

*Easley*, 990 F.2d at 909. Like *Easley*, this Court prefers the word "invalid" over "void" to describe the legal effect of actions taken in violation of the stay. While retroactive relief to lift or annul the stay under § 362(d) may be rarely warranted, the fact remains that the Code allows this Court, in its discretion, to validate actions taken in violation of the stay. But the Court stresses that unless and until such relief is granted by the Court, the act remains invalid and has no legal effect.

### Laches

13.    Even though the Court concludes that the Judgment is invalid, it does not necessarily follow that Debtor is entitled to damages pursuant to 11 U.S.C. § 362(k)(1). Defendant argues on summary judgment that Debtor's stay violation claims are barred by the doctrines of laches and judicial estoppel. As explained below, the Court disagrees with Defendant's laches defense but agrees that Debtor is judicially estopped from asserting his claims under § 362(k)(1).

14.     In order for laches to apply in a case, the party asserting the defense must establish two elements: (1) an unreasonable lack of diligence by the party against whom the defense is asserted; and (2) prejudice arising from the delay. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir.2003); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 620 (7th Cir.2002); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir.1999).   A defendant is prejudiced from delay in asserting a claim where the defendant has changed its position in a way that would not have occurred if the plaintiff had not delayed.  *Hot Wax*, 191 F.3d at 824.

15.     In response to Defendant's argument, Debtor insists that Defendant cannot invoke laches because of Defendant's hands are "unclean."

16.     It is true that a party's unclean hands may stand as an obstacle to the application of the doctrine of laches in certain circumstances.  The notion of unclean hands working as a bar to the application of laches stems from the belief that an equitable defense, such as laches, cannot be used to reward a party's inequities or to defeat justice.  *See Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief").  However, the Court need not reach that issue.  In the Court's view, Defendant was not prejudiced by Debtor's delay in asserting a claim for violation of the stay.  It is true that because the Court has deemed the Judgment invalid, Defendant will have to return to state court to further pursue its claims against Debtor for breach of their lending agreement.  In that sense, Defendant will be inconvenienced, if not prejudiced.[5]

---

[5] Defendant argues on summary judgment that Debtor waited to bring an action under § 362(k) with the expectation that Defendant would be time barred from collecting on the underlying obligation should the Judgment be deemed invalid or void.  But, as Debtor, points out in his response brief, Defendant will

17.    Defendant, however, is solely responsible for such prejudice. Defendant–seemingly aware of the conflicting case law on the validity of actions taken in violation of the stay–decided to rest on its Judgment for all these years. Defendant should have appreciated that there was at least some risk to doing so. Back in 2001, Defendant could have–and arguably should have–readily agreed to have its Judgment vacated, with the knowledge that it would be free to proceed with its action against Debtor as soon as his Chapter 7 case concluded. Instead, Defendant has insisted repeatedly on the Judgment's validity, despite the myriad of cases holding otherwise. It seems to this Court that if Defendant is ultimately prejudiced by this Court's ruling as to the validity of the Judgment, it has only itself to blame.

18.    Based on the foregoing, the Court is unwilling to apply the equitable doctrine of laches in Defendant's favor.

### Judicial Estoppel

19.    While Defendant's laches argument is unavailing, the Court agrees that Debtor is judicially estopped from asserting his claims under Code § 362(k)(1) because he did not disclose the them in his 2002 Chapter 13 bankruptcy case.

20.    In *Cannon–Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir.2006), the Seventh Circuit held that a Chapter 7 debtor was judicially estopped from pursuing a claim that she waited to file until after her debts were discharged and the bankruptcy was over. The court agreed with a number of other circuits that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Id.*; *Biesek*

---

arguably be free to return to state court and litigate Debtor's contractual obligation under the same timely filed cause in which the Judgment was issued. The Court agrees with Debtor. Defendant brought, and may presumably still maintain, its timely filed state action against Debtor for breach of their loan agreement.

15

*v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir.2006)("Plenty of authority supports the district judge's conclusion that a debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim."). Thus, in the bankruptcy context, judicial estoppel precludes a party from representing in bankruptcy that it has no outstanding claims, and then–after the bankruptcy is discharged or dismissed asserting the undisclosed claims for the party's own benefit.

21.     Subjective intent is relevant to the question of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (noting that it may be "appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake"); *In re Cassidy*, 892 F.2d 637, 642 (7th Cir.1990) ("[Judicial estoppel] should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake."); *but see Becker*, 2007 WL 1224039, at *1 ("Becker intimates that her failure to disclose this lawsuit in her sworn financial statement was unintentional, but her subjective intent does not matter.").

22.     In defense of Defendant's judicial estoppel argument, Debtor maintains that he did not list any cause of action against Defendant in his Chapter 13 bankruptcy because he assumed that the Judgment had been set aside upon his motion to the state court.  As previously indicated, Debtor insists that he did not receive notice of the hearing on the Motion to Set Aside or on the court's eventual ruling.

23.     While those facts are seemingly not in dispute, the Court cannot conclude that Debtor's failure to disclose a claim against Defendant in his Chapter 13 bankruptcy was borne out

16

of "inadvertence" or "mistake." In the Court's opinion, Debtor–a practicing attorney at all times relevant to this proceeding–should have taken steps to verify the disposition of his Motion to Set Aside, and his assumption that it was granted as routine was not a reasonable "mistake."

24.     It is also significant that Defendant filed a proof of claim in Debtor's Chapter 13 case that not only referenced the Judgment, but also included it as an attachment. That should have sufficiently alerted Debtor to the fact that Defendant, in the very least, was still pursuing, not just the underlying debt, but the Judgment as well. Debtor could have, at that point in time, amended his schedules to include a claim for stay violation against Defendant.

25.     The Court also disagrees with Debtor's insistence that Defendant's "unclean hands" prevent the application of judicial estoppel. Courts have uniformly recognized that the purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Even when one party's hands are unclean, another party's inconsistent positions may threaten judicial integrity. *See Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F.Supp.2d 1055, 1074 (C.D.Cal.2009) (citations omitted); *see also Milton H. Greene Archives, Inc. v. Marilyn Monroe, LLC*, 692 F.3d 983, 996 (9th Cir.2013) (explaining that "judicial estoppel is intended to protect the courts").

26.     Based on the undisputed facts, the Court holds that Debtor is barred, as a matter of law, from pursuing his claim for violation of the automatic stay by virtue of judicial estoppel.

<u>**Conclusion**</u>

Based on the foregoing, the Court holds that Defendant is entitled to summary judgment on judicial estoppel grounds and that Debtor is, therefore, barred from asserted a claim for damages pursuant to 11 U.S.C. § 362(k)(1). However, the Court further holds that the Judgment is invalid

17

and has no legal effect.

27.    The Court will issue a judgment consistent with the above Findings of Fact and Conclusions of Law contemporaneously herewith.

###